UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **LAMAR ALEXANDER CARTER,**<br><br>Petitioner,<br><br>v.<br><br>**RANDEE REWERTS,**<br><br>Respondent. | **2:19-CV-10287-TGB**<br><br>**OPINION AND ORDER DENYING HABEAS CORPUS PETITION (ECF NO. 1) WITH PREJUDICE AND DENYING AS MOOT PETITIONER'S MOTION FOR AN APPEAL BOND (ECF NO. 14)** |

Currently before the Court are Petitioner Lamar Alexander Carter's *pro se* habeas corpus petition under 28 U.S.C. § 2254, ECF No. 1, Respondent's answer in opposition to the petition, ECF No. 9, and Petitioner's second motion for an appeal bond, ECF No. 14. Petitioner is a state prisoner at the Carson City Correctional Facility in Carson City, Michigan. He challenges his Wayne County, Michigan convictions for second-degree murder, Mich. Comp. Laws § 750.317, assault with a dangerous weapon (felonious assault), Mich. Comp. Laws § 750.82, and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b.

In his habeas petition, Petitioner seeks relief on grounds that (1) the trial court erred when it scored the Michigan sentencing guidelines, and (2) his trial attorney deprived him of effective assistance by failing to develop a substantial defense theory. Pet., ECF No. 1, PageID.6–7. Respondent Randee Rewerts urges the Court to deny relief because, in his opinion, Petitioner's sentencing claim is not cognizable on habeas review or is meritless, and the state court's rejection of Petitioner's claims was reasonable. Answer in Opp'n to Pet., ECF No. 9, PageID.90–91. In his motion for an appeal bond, Petitioner seeks release from state custody, pending review of his habeas petition. Mot. for Release, ECF No. 14, PageID.1574–75. For the reasons set forth below, the Court **DENIES** Petitioner's habeas corpus petition and **DENIES** as moot Petitioner's motion for release on bond.

## I. BACKGROUND

### A. The Charges, Trial, Sentence, and Appeal

Petitioner was charged in Wayne County, Michigan with first-degree murder, felonious assault, and felony-firearm. He was tried before a jury in Wayne County Circuit Court. The Michigan Court of Appeals accurately summarized the facts adduced at trial as follows:

> A jury convicted defendant of fatally shooting Sean Key and assaulting Itterlee McNeil at Play Atlantis, an entertainment complex in Melvindale, on February 13, 2016. The prosecution presented evidence that two different families, with a tempestuous history, were coincidentally having separate children's birthday parties at the complex on the same evening. Various altercations occurred among several of the attendees. Ultimately, defendant left the complex, returned with a gun, and entered the party room where members of the other family were preparing to leave the premises. Defendant approached Itterlee and pointed the gun toward her face. Key was behind Itterlee and bent down to protect some nearby children. As Itterlee ducked, defendant fired the gun. The gunshot struck Key in the head, instantly causing his death. A Play Atlantis surveillance video camera captured the incident, and other witnesses identified defendant as the shooter.

*People v. Carter*, No. 335333, 2018 WL 910455, at \*1 (Mich. Ct. App. Feb. 15, 2018).

On September 13, 2016, the jury acquitted Petitioner of first-degree murder, but found him guilty of second-degree murder as a lesser offense of first-degree murder. The jury also found Petitioner guilty of felonious assault and felony firearm. *See* 9/13/16 Trial Tr., ECF No. 10-13, PageID.1113–16. On September 29, 2016, the trial court sentenced Petitioner to a term of twenty-five to forty years in prison for the murder conviction, two to four years for the assault conviction, and two years for

the felony-firearm conviction. *See* 9/29/16 Sentencing Tr., ECF No. 10-14, PageID.1137.

Petitioner filed an appeal as of right, claiming through counsel that the trial court erred and violated his constitutional rights when scoring offense variables ("OV") 5 and 9 of the Michigan sentencing guidelines. *See* Defendant-Appellant's Brief on Appeal, ECF No. 10-15, PageID.1228–31. Petitioner argued in a *pro se* supplemental brief that he was denied his constitutional right to effective assistance of counsel by counsel's failure to develop a substantial theory of defense. *See* Defendant's Pro Per Brief on Appeal, ECF No. 10-15, PageID.1262–66. The Michigan Court of Appeals rejected Petitioner's arguments and affirmed his convictions in an unpublished, *per curiam* opinion. *See* *Carter*, 2018 WL 910455. Petitioner raised the same arguments in the Michigan Supreme Court, which denied leave to appeal on July 3, 2018. *See People v. Carter*, 913 N.W.2d 292 (Mich. 2018).

## B. The Habeas Petition, Answer, Reply, and Motion for Release

Petitioner filed his habeas corpus petition on January 29, 2019. ECF No. 1. On September 10, 2019, Respondent filed an answer in opposition to Petitioner's habeas petition. ECF No. 9. Petitioner filed a

reply on October 21, 2019. ECF No. 11. In Petitioner's reply, Petitioner maintained that the trial court relied on "false information" when sentencing him, and defense counsel was "ineffective for failing to investigate and failing to present" a defense of others defense. *Id.* at PageID.1419.

Petitioner subsequently filed a motion for release from state prison on bond. ECF No. 12. After the Court denied the motion, ECF No. 13, Petitioner filed a second motion for release on bond. ECF No. 14. Petitioner has asked the Court to release him, pending review of his habeas claims, due to the COVID-19 pandemic and an outbreak of COVID-19 at the prison where he is incarcerated. Mot. for Release, ECF No. 14, PageID.1568–69. Petitioner argues that his habeas claims are substantial and that the COVID-19 outbreak is an exceptional circumstance which warrants release on bond. *Id.* at PageID.1569–75.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly

established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). Simply stated, "[f]ederal habeas courts must defer to reasonable state-court decisions." *Dunn v. Reeves*, 141 S. Ct. 2405, 2407 (2021). This is a "highly deferential standard," which "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (first quoting *Lindh v. Murphy,* 521 U.S. 320, 333 n.7 (1997); and then quoting *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002) (per curiam)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Only an 'objectively unreasonable' mistake, . . . one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir. 2019) (first quoting *White v. Woodall*, 572

U.S. 415, 419 (2014); and then quoting *Richter*, 562 U.S. at 103). "That's a 'high bar' to relief, which 'is intentionally difficult to meet.'" *Kendrick v. Parris*, 989 F.3d 459, 469 (6th Cir. 2021) (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015)), *cert. denied*, 142 S. Ct. 483 (2021).

## III. DISCUSSION

### A. The Sentence

Petitioner alleges first that the trial court erred and violated his rights under the Michigan and Federal Constitutions when the court scored OV 5 and OV 9 of the Michigan sentencing guidelines. ECF No. 1, PageID.41. Petitioner received 15 points for OV 5 and 25 points for OV 9. According to Petitioner, if OV 5 and OV 9 had been correctly scored at zero and 10 points, respectively, his total offense variable points would have been reduced by thirty points, and the sentencing guidelines would have been lower. *Id.* at PageID.42–44. The Michigan Court of Appeals adjudicated Petitioner's sentencing claims on the merits and concluded that the trial court did not err when assessing 15 points for OV 5 and 25 points for OV 9. *Carter*, 2018 WL 910455, at *1–2.

This Court finds no merit in Petitioner's claim, in part, because state sentencing guidelines are "a matter of state concern only," *Howard*

*v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The alleged violation of the Michigan Constitution also is not a cognizable claim on habeas corpus review, as "[a] federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). When "conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Petitioner nevertheless alleges that his rights under the Federal Constitution were violated by the scoring of OV 5 and OV 9. To prevail on this claim, Petitioner must show that the trial court violated his right to due process by relying on "extensively and materially false" information that he had no opportunity to correct through counsel. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). Stated differently, Petitioner must show that his sentence was "founded at least in part upon misinformation of constitutional magnitude." *United States v. Tucker*, 404 U.S. 443, 447 (1972).

-8-

### 1. OV 5

Petitioner objects to the scoring of OV 5 at 15 points. Petitioner states that the score should have been zero, as initially scored on the sentencing information report. ECF No. 1, PageID.43.

OV 5 requires an assessment of any psychological injury to a member of the victim's family. Mich. Comp. Laws § 777.35. Fifteen points is the proper score if "[s]erious psychological injury requiring professional treatment occurred to a victim's family." Mich. Comp. Laws § 777.35(1)(a). The score should be zero if "[n]o serious psychological injury requiring professional treatment occurred to a victim's family." Mich. Comp. Laws § 777.35(1)(b). When determining whether serious psychological injury to a victim's family may require professional treatment, "the fact that treatment has not been sought is not conclusive." Mich. Comp. Laws § 777.35(2).

At Petitioner's sentencing hearing, the prosecuting attorney stated that she had spoken to members of the victim's family and that the victim's daughter was receiving grief counseling. *See* 9/29/16 Sentence Tr., ECF No. 10-14, PageID.1124. Defense counsel objected on the basis that there was no record evidence to support the prosecutor's request to

have OV 5 scored at 15. *Id*. The trial court, however, agreed to score OV 5 at 15 points because it found that the witnesses' testimony demonstrated that they were overcome with grief. *Id*.

The victim's sister subsequently stated at the sentence hearing that her brother's murder was the worst day of her family's life. *Id*. at PageID.1128. The victim's daughter stated that she had been angry and confused immediately after hearing that her father was shot, and recalled collapsing in her aunt's arms and screamed "for what felt like hours" upon learning that her father had died. *Id*. at PageID.1130–31.

Based on this testimony, the trial court reasonably concluded that the victim's family members experienced serious psychological injury requiring professional treatment. Petitioner asserts that neither witness expressed any need for psychological counseling and that the presentence information report did not suggest any psychological injury. ECF No. 1, PageID.43. Even so, the fact that treatment may not have been sought is not conclusive. Mich. Comp. Laws § 777.35(2). And as noted above, the prosecutor stated at Petitioner's sentencing that the victim's daughter had already sought professional treatment.

Petitioner was not sentenced on misinformation of constitutional magnitude when the court assessed 15 points for OV 5. Therefore, he is not entitled to relief on his claim regarding the scoring of OV 5.

### 2. OV 9

Petitioner alleges that the trial court improperly scored OV 9 at 25 points. Petitioner argues that, at most, he should have been scored 10 points for OV 9 because two to nine people were placed in danger of physical injury or death. ECF No. 1, PageID.43–44.

When scoring OV 9, a state trial court must determine the number of victims in the case. Petitioner received 25 points, which would be correct if "[t]here were 10 or more victims who were placed in danger of physical injury or death, or 20 or more victims who were placed in danger of property loss." Mich. Comp. Laws § 777.39(1)(b).

Ten points is appropriate if "[t]here were 2 to 9 victims who were placed in danger of physical injury or death, or 4 to 19 victims who were placed in danger of property loss." Mich. Comp. Laws § 777.39(1)(c). No points should be scored if "[t]here were fewer than 2 victims who were placed in danger of physical injury or death, or fewer than 4 victims who were placed in danger of property loss." Mich. Comp. Laws § 777.39(1)(d).

When scoring OV 9, a sentencing court must "[c]ount each person who was placed in danger of physical injury or loss of life or property as a victim." Mich. Comp. Laws § 777.39(2)(a). "Each person placed in danger of injury or death during the commission of the sentencing offense is considered a 'victim' for the purpose of scoring OV 9." *People v. Baskerville*, 963 N.W.2d 620, 633–34 (Mich. Ct. App. 2020).

The two main victims in Petitioner's case were Sean Key, who was shot and killed during the incident, and Itterlee McNeil, who was assaulted when Petitioner pointed a gun at her. The trial court, however, considered there to be additional victims because the shooting occurred in a social hall with numerous people nearby. The court was persuaded that "[a]ny one of [the bystanders] could have been struck by a bullet," and "ha[d] suffered psychological injury . . . as a consequence of what . . . transpired." *See* 9/29/16 Sentence Tr., ECF No. 10-14, PageID.1125.

Petitioner argues that potential psychological injury to bystanders is irrelevant, and where Petitioner pointed the gun at one person, there was no evidence that other bystanders believed they were in danger. ECF No. 1, PageID.43–44. Additionally, according to Petitioner, the fact that

many people were present in the room where the shooting occurred is insufficient, without more, to justify a score of 25 points. *Id.* at PageID.44.

Kevin Speller, an employee at the venue where the shooting occurred, testified that there were about 15 people in the party room before Petitioner entered the room. *See* 9/8/16 Trial Tr., ECF No. 10-10, PageID.699, 701. Sanetta McNeil, the victim's girlfriend, estimated that there were 10 to 15 people fighting inside the room before the shooting. *See* 9/12/16 Trial Tr., ECF No. 10-12, PageID.929. Ms. McNeil also testified that Petitioner "had the whole room under control when he came in" because the bystanders seemed to be in shock and did not immediately duck when he displayed the gun. *Id.* at PageID.919–20. The trial court reasonably inferred from this testimony that 10 or more victims were placed in danger of physical injury or death when Petitioner entered the room, pulled out a gun, and fired the gun.

Petitioner was not sentenced on extensively and materially false information that he had no opportunity to correct through counsel when the trial court assessed 25 points for OV 9. Therefore, his federal constitutional argument as to the scoring of OV 9 fails.

## B.  Trial Counsel

Petitioner alleges in his second and final claim that his trial attorney provided ineffective assistance by failing to develop a substantial theory of defense. ECF No. 1, PageID.52. Petitioner asserts that the only plausible defense was that he acted in defense of others because his nephew was in the middle of a melee, and his family had been threatened. *Id*. at PageID.56.

### 1. Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set out clearly established federal law for an ineffective-assistance-of-counsel claim. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). To demonstrate that trial counsel's assistance was so defective as to require reversal of a conviction, a petitioner must show that their attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*.

"Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Because of the difficulties inherent in evaluating an attorney's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted).

A deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. There must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111–12 (quoting *Strickland*, 466 U.S. at 693).

When a state court rejects a defendant's ineffectiveness claim, a federal habeas court owes deference to counsel *and* the state court.

*Reeves*, 141 S. Ct. at 2410. In other words, "[w]hen the claim at issue is one for ineffective assistance of counsel . . . , AEDPA review is 'doubly deferential.'" *Woods v. Etherton*, 578 U.S. 113, 117 (2016) (per curiam) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). Not only must a petitioner overcome the strong presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Strickland*, 466 U.S. at 690, but the petitioner must also demonstrate that the state court was "necessarily unreasonable" in finding adequate assistance. *Cullen*, 563 U.S. at 190.

## 2. Application of *Strickland*

Petitioner's contention that defense counsel failed to develop a substantial theory of defense is not supported by the record. Petitioner concedes that defense counsel's efforts were hampered by a full videotape of the incident. ECF No.1, PageID.55. In addition, some witnesses identified Petitioner in a photo array before trial, some witnesses identified Petitioner at trial, and some witnesses described the suspect's general appearance and distinctive clothing, which ultimately linked Petitioner to the crime.

Given the overwhelming evidence that Petitioner was the shooter, defense counsel moved for a directed verdict of acquittal on the first-degree murder count because, in his opinion, there was no premeditation. *See* 9/12/16 Trial Tr., ECF No. 10-12, PageID.1023. Although the trial court denied the motion, *see id.* at PageID.1023–25, defense counsel subsequently argued to the jury that the prosecution had not carried its burden of proving that Petitioner premeditated the murder. Defense counsel maintained that Petitioner had merely acted on an impulse. *See* 9/13/16 Trial Tr., ECF No. 10-13, PageID.1067–69.

Defense counsel's strategy proved to be partially successful, as the jury acquitted Petitioner of first-degree murder and found him guilty of second-degree murder, which does not require premeditation and does not carry a sentence of mandatory life imprisonment without the possibility of parole. Mich. Comp. Laws § 750.316(a)(a) (definition of and punishment for first-degree premeditated murder); Mich. Comp. Laws § 750.317 (definition of and punishment for second-degree murder). Defense counsel may still be considered effective even if their strategy did not persuade the jury to acquit Petitioner. *See Smith v. Cook*, 956 F.3d 377, 393 (6th Cir. 2020) (concluding that although defense counsel's

tactics did not lead to acquittal, counsel's strategy was reasonable and did not deprive the petitioner of effective assistance).

Petitioner, nevertheless, asserts that the only plausible defense was that he acted in defense of others because his young nephew was in the middle of a melee, and Petitioner's family had been threatened. There was some testimony that Sanetta McNeil, the victim's girlfriend, hit Rakeeshia Thompkins, the fiancée of Petitioner's brother, and Rakeeshia's two-year-old son on the head during an altercation at Play Atlantis on the night of the shooting. *See* 9/9/16 Trial Tr., ECF No. 10-11, PageID.820–23, 845–47. Ms. Thompkins testified that, after Ms. McNeil threatened to kill her, she ran to her car and told Petitioner and her fiancé that she had been attacked. Petitioner then ran inside to get Ms. Thompkins's kids. *Id.* at PageID.825–28, 847–48.

But to invoke the defense of others defense, the defendant must show that they "reasonably believe[d] the other [was] in immediate danger of harm and force [was] necessary to prevent the harm," while only using deadly force to "repel an attack which reasonably appears deadly." *People v. Leffew*, No. 161797, 2022 WL 246549, at *7 (Mich. Jan. 26, 2022) (quoting 3A Gillespie, *Michigan Criminal Law & Procedure* (2d

ed.), § 91:59). Furthermore, "defense of others is generally not available to a person who is the initial aggressor." *Id.* (quoting *People v. Riddle*, 467 Mich. 116, 120 n.8, 649 N.W.2d 30 (2002)).

One witness (Blake Powrozek) testified at Petitioner's trial that no one, other than the suspect, was armed with a gun that night. *See* 9/8/16 Trial Tr., ECF No. 10-10, PageID.592. Three other witnesses (Matthew Sousa, Itterlee McNeil, and Kevin Speller) also did not see anyone else with a gun. *See id.* at PageID.642 (Sousa), PageID.691 (I. McNeil), PageID.705 (Speller). Ms. Sanetta McNeil likewise testified that she did not see anyone else with a gun. 9/12/16 Trial Tr., ECF No. 10-12, PageID.937.

Further, as the Michigan Court of Appeals pointed out, there was no evidence that Petitioner's nephew was in danger when Petitioner entered the building, assaulted Itterlee McNeil, and shot Sean Key. In fact, one witness (David Perovich) testified that he believed someone had picked up Petitioner's nephew to protect him from the melee. *See* 9/8/16 Trial Tr., ECF No. 10-10, PageID.555. Another witness (Kimberly White) testified that, before the shooting and after the woman with the baby or toddler dropped the child, the child was passed around and ultimately

returned to the woman who had dropped the child and gone outside. *Id.* at PageID.610–12.

Two witnesses (Blake Powrozek and Kevin Speller) testified that the melee had quieted down before the shooting. *Id.* at PageID.598 (Powrozek), PageID.700–01 (Speller). Mr. Speller specifically stated that the shooting occurred when the victim insulted Petitioner without physical altercation. *Id.* at PageID.716–17. Additionally, Detective Corporal Amber Martinez testified that police were aware that Petitioner ran out of the building and fled the state after the shooting. *See* 9/12/16 Trial Tr., ECF No. 10-12, PageID.993–96.

There was no testimony suggesting that Petitioner's nephew was in immediate danger of harm and that force was necessary to prevent harm or to repel a deadly attack. Thus, a defense that Petitioner acted in defense of his young nephew would not have been a viable defense, and defense counsel's failure to raise the defense did not amount to ineffective assistance of counsel.

Defense counsel's representation did not fall below an objective standard of reasonableness, and there is not a reasonable or substantial probability that the outcome of the trial would have been different had

defense counsel argued that Petitioner acted in defense of his young nephew. Furthermore, the state appellate court's rejection of Petitioner's ineffectiveness claim was objectively reasonable. Given the double deference due to the state court's decision and to defense counsel's choice of a reasonable trial strategy, the Court concludes that Petitioner is not entitled to relief on his ineffective assistance of counsel claim.

## IV. CONCLUSION

The Michigan Court of Appeals' adjudication of Petitioner's constitutional claims was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or based on an unreasonable determination of the facts. Accordingly, the Court **DENIES** Petitioner's application for a writ of habeas corpus, ECF No. 1.

The Court also **DECLINES** to issue a certificate of appealability because Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). What is more, reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the issues deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). However, because Petitioner was granted permission to proceed *in forma*

*pauperis* in this Court, *see* Order (ECF No. 5), he may appeal this decision *in forma pauperis* without further authorization from the Court, as an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

Finally, having resolved the habeas petition, the Court **DENIES** as moot Petitioner's motion for an appeal bond pending a decision on his habeas petition (ECF No. 14).

**IT IS SO ORDERED.**

Dated: September 12, 2022      s/Terrence G. Berg
                              TERRENCE G. BERG
                              UNITED STATES DISTRICT JUDGE